David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Attorney for Defendants
Kyle David Grant; Travis Paul Grant and
Mariel Lizette Grant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Jane Doe,

Plaintiff,

vs.

Travis Paul Grant, *et al.*,

Defendants.

Case No. 20-CV-02045-PHX-SPL

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Fed. Civ. P. 12(b)(2), Defendants Kyle David Grant, Travis Paul Grant and Mariel Lizette Grant ("Defendants") respectfully move for an order dismissing Plaintiff's Complaint on the basis that Defendants are not subject to personal jurisdiction in Arizona.

## I. INTRODUCTION

The facts of this case are simple. Defendants, all residents of Florida, operate several websites which archive and republish criminal records including booking photos, commonly referred to as "mugshots". *See* Compl. ¶¶ 1–2. None of these websites, with geographically-neutral names like www.RapSheets.org, www.BailBondSearch.com and www.PublicPoliceRecord.com, are specifically focused on Arizona. Rather, the sites contain tens of millions of public records from 45 different U.S. states; the only states *not* represented in the index are Alaska, Delaware, Hawaii, Massachusetts and Vermont.

In terms of how they function and how information is gathered, Defendants' websites are all basically the same. First, an individual is arrested and their mugshot and arrest details are published on the Internet by the arresting agency. Using Maricopa County as an example, the Sheriff's Office publishes this information on its website at: https://www.mcso.org/Mugshot/. *See* Affidavit of Travis Grant ("Grant Aff.") ¶¶ 7–8.

After the information is released by the arresting agency, Defendants use software to automatically copy the mugshot and associated details. Mugshots and related arrest information are then republished on Defendants' site *verbatim* in a standardized format.

**Typical MCSO Mugshot Page**




GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

At present, Defendants' database contains more than 20 million arrest records. Travis Grant Aff. ¶ 10. All of this information was obtained from public Internet websites operated by law enforcement agencies across the country including some in Arizona.

According to her Complaint, Plaintiff Jane Doe alleges she was arrested on October 20, 2018 by the Maricopa County Sheriff's Office. *See* Compl. ¶ 6. As per MCSO's usual practice, Plaintiff's mugshot and arrest details were published by MCSO on its website shortly thereafter. *See* Compl. ¶ 7. After this information was released, Plaintiff alleges her mugshot and arrest information was republished on Defendants' website "since at least October 20, 2018". Compl. ¶ 8.

Based on these facts, Plaintiff brings three claims for relief: 1.) a statutory claim under Arizona's new "Mugshot Act", A.R.S. §§ 44–7901 & 7902; 2.) a claim for misappropriation of name/likeness under Arizona common law; and 3.) a claim of false light under Arizona common law. Plaintiff also seeks a preliminary and permanent injunction requiring Defendants to remove her mugshot and arrest records.

Regarding personal jurisdiction, Plaintiff's Complaint is very clear—the <u>only</u> basis for hailing Defendants into Arizona is a new "nexus" provision of the Mugshot Act which states: "A mugshot website operator that publishes a subject individual's criminal justice record for a commercial purpose on a publicly accessible website <u>is deemed to be transacting business in this state</u>." A.R.S. § 44–7902(A) (emphasis added).

As explained below, personal jurisdiction is lacking here for several reasons:

1.) The Mugshot Act's nexus clause, A.R.S. § 44–7902(A), is blatantly unconstitutional both on its face and as applied to the facts of this case. This is so because it attempts to expand Arizona's personal jurisdiction *farther* than permitted by federal law and based on standards *lower* than those required by federal law; the Supremacy Clause does not permit this;

2.) Even assuming the Mugshot Act's long arm clause was not otherwise invalid and unconstitutional, A.R.S. § 44–7902(A) does not support personal jurisdiction here because that part of the Mugshot Act directly conflicts with, and is preempted by, a different federal law, specifically the Communications Decency Act, 47 U.S.C. § 230(c)(1);



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

3.) Because personal jurisdiction cannot be established under the Mugshot Act, and applying existing U.S. Supreme Court precedent, Defendants are not subject to personal jurisdiction in Arizona.

For those reasons, the Complaint should be dismissed for lack of personal jurisdiction.

## II. DISCUSSION

It is hornbook law that a state must have personal jurisdiction over the defendant before a binding judgment may be entered against him. Equally settled is the concept that among things, personal jurisdiction will usually exist if the defendant is "transacting business" in the forum. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'")

In an effort to both exploit and satisfy that rule, A.R.S. § 44–7902(A) creates a legal fiction—i.e., that any person who publishes mugshots on the internet for a commercial purpose *is deemed to be transacting business in Arizona*, even if they are not actually doing any business here. This law was clearly intended to create a basis to automatically exercise jurisdiction over all non-resident website operators, regardless of whether they are *actually* transacting business in Arizona, and regardless of whether the defendant *actually* has any minimum contacts with the State of Arizona.

Indeed, the Mugshot Act was written and lobbied-for by Plaintiff's counsel in this case, and in an opinion piece published shortly after the law was passed, a staff member from Plaintiff's counsel's firm explained the "nexus" provision of A.R.S. § 44–7902(A):

> The new law defines mugshot website companies as "mugshot website operators" and outlaws their operation for commercial purposes.[1] <u>The law has a subsection that establishes a nexus between out of state mugshot companies and the Arizona citizens they are exploiting</u>. The law also

[1] This statement misrepresents the law. Nothing in the Act prohibits the publication of mugshots for "commercial purposes".



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

> prescribes hefty damages that mugshot website companies will have to pay to those affected if they do not comply with the law, between $100 and $500 per day the company breaks the law.

Steven Scharboneau, *Arizona joins fight against mugshot website companies*, Arizona Capitol Times; September 10, 2019 (emphasis added) (available at: https://azcapitoltimes.com/news/2019/09/10/arizona-joins-fight-against-mugshot-website-companies/ (last visited October 30, 2020).

As explained below, the Mugshot Act's "nexus" provision is unconstitutional on its face, and as applied, for the simplest of reasons—because the minimum contacts required to satisfy the federal Due Process Clause *must actually exist*, and they must exist according to the factual and legal standards established by decades of U.S. Supreme Court precedent. These contacts and the constitutional "nexus" they engender are not a joke, to be disregarded at the slightest whim, nor can they be artificially fabricated through statutory hocus pocus.

Here, the Mugshot Act's "nexus" clause attempts to use a fictional legal presumption to create a *far lower* standard for personal jurisdiction than permitted by federal law.[2] In doing so, this new state law thumbs its nose at the United States Constitution in a manner that renders the law facially unconstitutional. As such, A.R.S. § 44–7902(A) is invalid and provides no basis for personal jurisdiction in this case.

**a. A.R.S. § 44–7902(A) Is Unconstitutional**

It is well-settled "Arizona's long arm statute [Ariz. R. Civ. P. 4.2] 'provides for personal jurisdiction **co-extensive** with the **limits** of federal due process.'" *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1070 (D. Ariz. 2010) (emphasis added); *see also* Ariz. R. Civ. P. 4.2(a) (providing, "An Arizona state court may exercise personal jurisdiction over a person … to the maximum extent permitted by … the United States Constitution.") (emphasis added).

---

[2] Indeed, the constitutional infirmity of A.R.S. § 44–7902(A) is underscored by the fact that Arizona's existing long-arm law *already* extends Arizona's personal jurisdiction to the farthest extent *permitted* by federal law. *See* Ariz. R. Civ. P. 4.2. As such, it was neither necessary, nor constitutional, to extend Arizona's personal jurisdiction farther.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Thus, in most cases, mapping the precise jurisdictional scope of *Arizona law* is not necessary. That is so because whatever those limits may be, Arizona's reach extends only as far as *federal due process* permits, and no further. *See Amini v. Bezsheiko*, 2020 WL 1911212, at *2 (D.Ariz. 2020) (holding because Arizona's personal jurisdiction extends only as far as federal law allows, "analyzing personal jurisdiction under Arizona law and federal due process is the same.") (citing *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (Ariz. 1995) (en banc)).

But what if Arizona decided "the same" was no longer good enough? What if Arizona wanted to go further and expand its personal jurisdiction *beyond the limits of federal due process*? For instance, imagine a new law which declared: "All residents of every state are subject to personal jurisdiction in Arizona." Would that sweeping long-arm law be effective and enforceable to hail non-residents into Arizona?

Of course not. No state has the power to abrogate federal law, nor may any state disregard the limitations of federal law; that is precisely why such limits exist. In the context of personal jurisdiction, the Supreme Court has made this exceptionally clear: "The Due Process Clause of the Fourteenth Amendment **limits the power of a state** court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (emphasis added); *see also Hanson v. Denckla*, 357 U.S. 235, 250 (1958) ("a State is forbidden to enter a judgment attempting to bind a person over whom it has no jurisdiction … .")

Here, the absurd hypothetical statute giving Arizona nationwide (indeed, *worldwide*) jurisdiction over all websites is not hypothetical and nor is it a joke; it is real. That is exactly what the legislature attempted to do when it passed A.R.S. § 44–7902(A).

The language of A.R.S. § 44–7902(A) is self-explanatory; it purports to create a legal fiction, *to wit*: any person who publishes a mugshot on a website for a "commercial purpose" is "deemed" to be *transacting business in Arizona* and thus subject to personal jurisdiction in Arizona. This is true regardless of where the defendant resides. This is true regardless of where the plaintiff resides. This is true regardless of where the mugshot was

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

taken, and it is true regardless of where any unlawful conduct occurs or where the harm from such conduct is felt. Minimum contacts? No longer necessary.

Under the plain language of A.R.S. § 44–7902(A), it is not even necessary that the defendant publish any photos of any person living in Arizona or arrested in Arizona; all that is necessary is for the defendant to publish a mugshot of *anyone* taken *anywhere* at *anytime*. If the defendant earns a single penny (or even attempts, unsuccessfully, to do so) the defendant is "deemed" to be transacting business in Arizona, and thus is subject to personal jurisdiction here. Federal due process limits? Go jump in a lake…

In light of its striking overbreadth and its stunning lack of respect for the federal due process requirements imposed by decades of controlling Supreme Court precedent, it is clear A.R.S. § 44–7902(A) is invalid and unconstitutional. This is so because as a matter of both common sense and as a matter of law due to the operation of the Supremacy Clause, the State of Arizona cannot, by rule, statute, magic spells, or otherwise, expand the reach of its personal jurisdiction *beyond* the strict limits imposed by any superior law such as the U.S. Constitution. Should Arizona attempt to do so, the conflicting state law must fail under well-settled Supremacy Clause principles.

Because A.R.S. § 44–7902(A) is a brand-new law, it raises a question of first impression, but the governing principles involved in the analysis are hardly new. For example, *Kadota v. Hosogai*, 125 Ariz. 131, 608 P.2d 68 (Ariz.App. 1980) involved a virtually identical issue in an analogous context.

*Kadota* involved a lawsuit filed in Arizona against a resident of Japan who allegedly caused a traffic accident which killed the plaintiff's husband. The plaintiff sought to obtain personal jurisdiction over the defendant by completing service in Japan in a manner expressly authorized by the Arizona Rules of Civil Procedure and by Arizona statutory law. However, the method of service used by the plaintiff directly conflicted with the limits imposed by a higher law—an international treaty (the Hague Convention). Thus, the question was whether Arizona could exercise personal jurisdiction in a manner that violated another *superior* law.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

The defendant argued Arizona lacked personal jurisdiction over him because the methods of service used violated the Hague Convention, even though these methods were allowed by Arizona law. The trial court rejected this argument, but the Court of Appeals reversed. In doing so, the Court of Appeals explained:

> [The Supremacy Clause] has always been interpreted to mean that a treaty entered into by the United States shall be superior to and prevail over any conflicting laws of the individual states. Therefore, <u>the State of Arizona cannot attempt to exercise jurisdiction under a rule promulgated by its courts if that rule would violate an international treaty</u>.

*Kadota*, 125 Ariz. at 134, 608 P.2d at 71 (emphasis added) (citing *Ware v. Hylton*, 3 Dall. 199, 1 L.Ed. 568 (1796); *United States v. Pink*, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *Hauenstein v. Lynham*, 100 U.S. 483, 25 L.Ed. 628 (1879)).

Other Arizona courts, including the Arizona Supreme Court, have recognized the same standard in other personal jurisdiction disputes. *See*, *e.g.*, *Cardona v. Kreamer*, 225 Ariz. 143, 147 (Ariz. 2010) (en banc) (agreeing "By virtue of the Supremacy Clause … the [Hague] Convention pre-empts inconsistent methods of service prescribed by state law.") (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)). Although these cases dealt with the *method* of service used to obtain personal jurisdiction rather than the substantive reach of the state's long arm statute, the analysis is identical; "When there is a conflict between a validly-enacted federal law and a state law, the federal law prevails." *Mortenson v. Mortenson*, 409 N.W.2d 20, 22 (Minn. Ct. App. 1987) (finding Minnesota's state long-arm statute preempted by "more restrictive" limits of federal law); *Dinsmore v. Martin Blumenthal Associates, Inc*., 314 So.2d 561, 567 (Fla. 1975) ("A [state] long-arm statute is unconstitutional unless it … requires a showing of minimal contacts sufficient to meet [federal] due process requirements.")

Again, while no Arizona case has yet interpreted A.R.S. § 44–7902(A), that law's "nexus" provision is functionally similar, if not identical, to the Delaware statute struck down by the U.S. Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186 (1977).



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

In *Shaffer*, Delaware state law effectively imposed personal jurisdiction on any person who owned stock in a Delaware corporation, even if the defendant had no other contacts with Delaware. Put differently, the State of Delaware attempted to decree the existence of a "nexus" between itself and non-residents based solely on their ownership of stock in a company which happened to be formed under Delaware law.

"*Not so fast there, Delaware!*" the Supreme Court firmly admonished. After reviewing the controlling federal due process standards, the Supreme Court easily found the Delaware law unconstitutional, because it attempted to create personal jurisdiction based on a *lower standard* than required by the federal Due Process Clause. In conclusion, the Court explained the axiomatic rule: "The Due Process Clause 'does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties, or relations.'" *Shaffer*, 433 U.S. at 216 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

The rule and logic of *Shaffer* apply fully to this case. No matter how benevolent its reason or purpose, the State of Arizona cannot magically fabricate or falsify the existence of minimum contacts through statutory subterfuge. The law simply does not work this way, nor should it. A defendant's forum-related contacts *must actually exist* according to standards set by controlling U.S. Supreme Court precedent. The absence of such contacts is a fatal constitutional gap which precludes the exercise of personal jurisdiction, and that gap cannot be circumvented with cheap legal fictions like the one created by A.R.S. § 44–7902(A). *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (rejecting use of "legal fictions" to establish personal jurisdiction over a defendant in the absence of actual minimum contacts, and finding such practice is "plainly unconstitutional … ."); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 900 (2011) ("the Court has made plain that legal fictions … should be discarded, for they conceal the actual bases on which jurisdiction rests.") (Ginsburg, J., dissenting) (quoting *Shaffer*, 326 U.S. at 316).

For these reasons, A.R.S. § 44–7902(A) is plainly unconstitutional and it cannot be used to established personal jurisdiction over Defendants.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**b. The Mugshot Act Is Preempted By Federal Law, 47 U.S.C. § 230(c)**

Even if A.R.S. § 44–7902(A) was not otherwise unconstitutional, it would still not support personal jurisdiction here. This is so because under the facts of this case, the Mugshot Act's nexus provision is preempted by a different federal law—the Communications Decency Act, 47 U.S.C. § 230 (the "CDA").

This conclusion is based on the interplay of two different parts of the Mugshot Act. The first part is A.R.S. § 44–7901 which defines the term "*mugshot website operator*" to mean "a person that [sic] publishes a criminal justice record on a publicly available internet website for a commercial purpose." (emphasis added). The second part is A.R.S. § 44–7902(A) which extends personal jurisdiction to any "*mugshot website operator* that publishes a subject individual's criminal justice record for a commercial purpose on a publicly accessible website … ." (emphasis added).

These two aspects of the Mugshot Law are preempted by the CDA under the facts of this case. This is so because the CDA expressly preempts[3] any state law which treats a website operator or user as a "publisher" of information originating with a third party:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1) (emphasis added).

For the CDA to apply, three elements must be present; the defendant must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), cert. denied, 140 S. Ct. 2761 (2020).

---

[3] *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (explaining, "The Communications Decency Act states that '[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider,' and expressly preempts any state law to the contrary.") (emphasis added) (citing 47 U.S.C. § 230(e)(2)).

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Here, all three elements are present. First, Defendants operate several websites. *See* Compl. ¶ 2. Thus, the first element is present; "Websites are the most common interactive computer services." *Dyroff*, 934 F.3d at 1097. *See also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008).

Second, the Complaint seeks to treat Defendants as "publishers". *See, e.g*, Compl. ¶ 9; "Since at least October 20, 2018, Defendants … published Plaintiff's criminal justice records … ." (emphasis added). The Complaint further alleges Defendants are "mugshot website operators" within the meaning of A.R.S. § 44–7901 which defines that term as "a person that publishes a criminal justice record on a publicly available internet website …." (emphasis added). The CDA's second element is met.

Third, the Complaint admits the "information" at issue (Plaintiff's mugshot and arrest records) was neither created nor developed by Defendants, nor did Defendants post this information on the Internet in the first place. It is undisputed this information was created by the Maricopa County Sheriff's Office and it was first published on the Internet by MCSO, not by Defendants. *See* Compl. ¶ 7. Thus, all three elements are met.

To be sure, after Plaintiff's mugshot and arrest information was published online by MCSO, this information was literally "*republished*" by Defendants. But that is exactly what the CDA *allows*; "Plaintiffs are free under section 230 to pursue the originator of a defamatory Internet publication. Any further expansion of liability must await congressional action." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 62–63, 146 P.3d 510, 529 (Cal. 2006) (also explaining, "The prospect of blanket immunity for those who intentionally redistribute defamatory statements on the Internet has disturbing implications. Nevertheless, by its terms section 230 exempts Internet intermediaries from defamation liability for republication.") (emphasis added).

Similarly, although the CDA prohibits monetary liability, Section 230's impact is not limited to damages. Rather, "[S]ection 230(c)(1) precludes courts from treating internet service providers as publishers not just for the purposes of defamation law, with its particular distinction between primary and secondary publishers, but in general."

*Barnes v. Yahoo!, Inc.*, 570 F3.d 1096, 1104 (9th Cir. 2009) (emphasis added); *see also Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F.Supp.2d 929, 933 (D.Ariz. 2008) (website operator could not be treated as publisher or speaker of third party statement); *Hassell v. Bird*, 5 Cal.5th 522, 541 (Cal. 2018) (website operator not a publisher, even when no money damages are sought; "Even though plaintiffs did not name Yelp as a defendant, their action ultimately treats it as 'the publisher or speaker of ... information provided by another information content provider' … section 230 prohibits this … .")

Because the CDA forbids Plaintiff from treating Defendants as "publishers" of information that originally was posted on the Internet by MCSO, this means the "nexus" provision of A.R.S. § 44–7902(A) cannot apply here, even if that law was otherwise constitutional. In fact, another judge of this Court has already determined the CDA fully applies to the republication of mugshots and criminal records, as long as those records are obtained from other "preexisting websites" (as occurred here). *See Doe v. Oesterblad*, 2015 WL 12940181, *2 (D.Ariz. 2015) (holding CDA applied to claims against defendant for republishing plaintiffs' "names, photographs, and criminal history" because that information was already published on the Internet by third parties). Other courts have reached exactly the same conclusion. *See, e.g., O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) (CDA applied to Google's indexing and republication of information obtained from existing online criminal records).

In sum, although this may sound slightly absurd at first blush, the CDA's application to the facts of this case means Defendants cannot be treated as "mugshot website operators", even though they operate a website that happens to display mugshots. This admittedly paradoxical conclusion is required because the Complaint very clearly accuses Defendants of *republishing* a mugshot that was initially published online by a third party (MCSO). Because the information was originally published online by MCSO, the CDA does not permit Plaintiff to treat Defendants as "publishers" of Plaintiff's mugshot (within the meaning of A.R.S. § 44–7902(A)). Therefore, per 47 U.S.C. § 230(c)(1) Defendants *are not* "mugshot website operators".



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

While that result may sound strange at first, stop and think about this question—would the Court consider *Google* a "mugshot website operator"? Probably not.

Yet, but-for the CDA, Google would certainly meet the definition of "mugshot website operator" set forth in A.R.S. § 44–7901: Google "publishes" criminal justice records on a publicly available website for a commercial purpose. Indeed, it is probably accurate to say that no single website on Earth publishes more criminal justice records than Google, and very few websites earn more money from that practice as Google does.






GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

But no one would seriously argue Google is a "mugshot website operator". Nor could they; courts have consistently agreed Google cannot be treated as the "publisher" of third party information it displays, even if that information includes criminal records and even if Google profits from this. *See e.g.*, *O'Kroley*, *supra*, 831 F.3d at 353–54.

Just like Google, Defendants use software to automatically gather information from existing third party websites. Just like Google, Defendants copy and display that information on their website. Indeed, Google not only displays mugshots and arrest records in its index, it displays *precisely the same mugshots and records* as Defendants.[4]

Yet as a matter of law, Google is not a "mugshot website operator" because the CDA prohibits treating it as a publisher of information that was originally placed online by another source. The same is true of Defendants. For that reason, Defendants do not qualify as "mugshot website operators" within the meaning of A.R.S. § 44–7901(4). Therefore, its other problems aside, the nexus provision of A.R.S. § 44–7902(A) cannot be used to create personal jurisdiction over Defendants. Plaintiff must therefore carry the burden of proving personal jurisdiction under existing legal standards.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**c. Applying Traditional Personal Jurisdiction Rules, Defendants Are Not Subject To Personal Jurisdiction In Arizona**

Because the Complaint's only alleged basis for personal jurisdiction fails, the Court need not consider whether jurisdiction might be proper under some other hypothetical unpleaded theory. However, if the Court allows Plaintiff to present such arguments, it is clear she cannot meet her burden of establishing personal jurisdiction.

---

[4] Plaintiff's mugshot appears on Defendant's website here:
https://www.publicpolicerecord.com/arizona/phoenix-jail/EMERY_SANDRA/T499564

Google independently created and maintains an identical copy of that page here:
https://webcache.googleusercontent.com/search?q=cache:1dEJgAgg6lkJ:https://www.publicpolicerecord.com/arizona/phoenix-jail/EMERY_SANDRA/T499564+&cd=1&hl=en&ct=clnk&gl=us

First, as explained in the affidavits submitted herewith, Defendants all reside in Florida. Defendants own no property in Arizona, and they have no customers in Arizona.

Insofar as it relates to Defendants' website, the site itself is free to use. Defendants do not charge money to allow visitors to search for or view records, and Defendants do not sell any products or services on the site. Rather, the site's sole source of income is from passively displaying advertising from Google, based in California.

Specifically, like countless other similar websites, Defendants' sites contain "Google Ads". These are small advertisements created by third party advertisers. Defendants' websites contain a small amount of code which displays these third party ads. In turn, the third party creator of each ad pays a fee to Google, and Google shares some of that revenue with Defendants based on the amount of views each ad receives. While their sites do contain advertising from Google, Defendants do not target any of that advertising toward Arizona. Indeed, Defendants have no control over *what ads* appear on their site. That decision is made solely by Google.

As noted above, Defendants' websites are not focused specifically on Arizona, as opposed to any other state. Rather, these sites contain tens of millions of arrest records automatically complied and gathered from 45 different states including, but not limited to, Arizona. In this way, the only real connection this case has to Arizona is the fact Plaintiff currently resides here.

As a matter of law, this is not sufficient to create personal jurisdiction for the reasons descried in the highly analogous case, *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170 (N.D.Ill. 2017). That case involved claims brought against a website owner, Intelius, which "provide[s] online reports on people, using information complied from public records and other sources." *Dobrowolski*, 2017 WL 3720170, *1. After finding Intelius used her name in commercial advertising without her consent, the plaintiff sued in her home state of Illinois, asserting violations of the Illinois Right of Publicity Act. *See id*. This is analogous to Plaintiff's claims in this case which include a claim for misappropriation of her name/likeness.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Intelius moved to dismiss for lack of personal jurisdiction. In response, the plaintiff pointed to the fact that Intelius admitted "the company has data on 'far more' than 5,000 Illinois residents …" in its database. *Id*. at *3. Despite the fact that Intelius gathered records relating to thousands of people in Illinois, the district court found personal jurisdiction did not exist in Illinois. This holding was based on a single key point—the *only* connection the case had with Illinois was the fact that plaintiff lived there:

> Dobrowolski does not allege that Intelius's ads have any specific geographic tie to Illinois, only that Intelius's ads geographically target her, an Illinois resident, whenever her name is searched. But "the mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."

*Id*. at *4 (emphasis added) (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1126 (2014)).

Arizona courts have applied the same standard; the mere fact that a Plaintiff lives in Arizona is not sufficient to create personal jurisdiction here. *See Xcentric Ventures, LLC v. Bird,* 683 F. Supp. 2d 1068, 1074 (D.Ariz. 2010) (adopting rule that an intentional internet-based tort with a known forum resident victim was insufficient to create personal jurisdiction when plaintiff's residence provides the sole connection to Arizona). This is so because as the Supreme Court has repeatedly explained, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

In short, simply displaying information about an Arizona resident on a website based in Florida is not sufficient to establish personal jurisdiction here; "When a defendant operates an 'essentially passive website' and has 'done nothing to encourage residents of the forum state to access its site,' those acts are insufficient to confer jurisdiction over an out-of-state defendant." *EZScreenPrint LLC v. SmallDog Prints LLC*, 2018 WL 3729745, *2 (D.Ariz. 2018); *see also Kruska v. Perverted Justice Found. Inc*., 2009 WL 249432, *4 (D.Ariz. 2009) (explaining, "A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.")

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Indeed, the facts of this case are even *less* supportive of personal jurisdiction for another reason—until this action was filed, Defendants had no idea Plaintiff lived in Arizona; only that she was arrested at some point in Arizona. This is insufficient to show that Defendants "purposefully directed" conduct at Arizona because Defendants' website automatically gathers and then passively displays information about thousands of arrests (i.e., Defendants do not personally review or research each arrest record). However, if Defendants had reviewed Plaintiff's arrest record, the only information they would have seen was the fact that Plaintiff happened to be arrested, one time, in Maricopa County. When it published Plaintiff's mugshot, MCSO did not provide Plaintiff's home address, and Defendants had no knowledge Plaintiff lived here.

Of course, it is probably fair to assume that most people are arrested in their home states, rather than while traveling in another state, but that is certainly not *always* the case. It was equally possible that at the time she was arrested in Arizona, Plaintiff could have been living in California, Nevada, New Mexico, Utah, or a different country for that matter. Either way, even though Defendants had no idea Plaintiff lived in Arizona, even if they did, "mere knowledge of the [plaintiff's] individual's residence is not sufficient to create personal jurisdiction." *Xcentric Ventures*, 683 F. Supp. 2d at 1074 (citing authorities).

Because there is no basis to find that Defendants engaged in minimum contacts with Arizona, the inquiry ends. As such, the Complaint should be dismissed for lack of personal jurisdiction.

**III. CONCLUSION**

For the reasons stated, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.

DATED: October 30, 2020.

**GINGRAS LAW OFFICE, PLLC**

David S. Gingras, Esq.
Attorney for Defendants

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020, I transmitted the attached document to the Clerk's Office for filing via ECF, and emailed a copy of the foregoing to:

Craig Jacob Rosenstein, Esq.
ROSENSTEIN LAW GROUP, PLLC
8010 East McDowell Road, Suite 111
Scottsdale, AZ 85257
Attorney for Plaintiff

________________________________